EX PARTE S. T. HUBBARD.

No. 24036. Delivered March 3, 1948.
Rehearing Denied March 31, 1948.

Robert L. Dalby, Connor W. Patman, Norman C. Russell, all of Texarkana, for appellant.

Ernest S. Goens, State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Andrew Hill, Charlie Lee, S. T. Hubbard, and Joe Johnson were jointly indicted for the murder of R. F. Talley.

The record shows that upon a severance Andrew Hill had

been tried and given the death penalty, from which an appeal is now pending in this court.

Relator applied for a writ of habeas corpus seeking bail. Upon a hearing bail was denied, and it is from the order denying bail that this appeal is prosecuted.

W. C. Shipp and R. F. Talley were Deputy Sheriffs of Bowie County, Texas, and on the night of November 8, 1947, they were working on the highway around the beer joints and honky-tonks. The officers stopped a car with defective lights. It was occupied by four or five negroes and was being driven by Sam Hill, a brother of Andrew Hill. The officers had caused this car to pull out to the side of the road, and they had pulled out to the side in their own car ahead of the car with the defective lights. While the officers were talking to the negroes about the lights another car drove up going in the same direction, and pulled out to the side of the road ahead of the officers' car and stopped. The officers did not stop this car. Among other negroes in this second car was Andrew Hill. He, together with a number of other negroes got out of this car and went back to Sam Hill's car. It appears that Andrew Hill asked the driver of the second car to stop so he could see about his brother Sam. As we understand the record, Sam Hill was not arrested for having defective lights, but when the second car drove up the officers ascertained that Fletcher Davis, who was driving that car, had no driver's license, and told him they would have to take him into the justice of the peace. The other negroes apparently went along voluntarily to help pay his fine. None of them was under arrest save Davis.

The State introduced Hubbard's confession, which omitting formal parts, is as follows:

"* * * Last Saturday Night, November 8th, 1947, Ernest Fletcher Davis came by my house with Andrew Hill and picked me and his grandfather up and we went back to Ernest Fletcher Davis's house and let his grandfather out then we went and picked up Joe Johnson, and Ray Davis and we all went to Tidwell's Beer Joint which is located a mile or two east of Hooks on U. S. Highway 82. We went there in Ernest Fletcher Davis's car, and I drank one bottle beer there. The other fellows also drank some beer but I do not know how much but none of them seemed to be effected by it. While there we met Joe N. Lott, Charlie Lee, Herman Gooden, Sam Hill and two girls that I do not know and we all decided to go to another beer joint which

is located on U. S. Highway No. 67 west of Texarkana. We left Tidwell's place around 11 o'clock P. M., and went in two cars, Sam Hill and Joe Johnson along with the two girls went in Sam Hill's car and me, Ray Davis, Andrew Hill, Joe N. Lott, Charlie Lee, Herman Gooden went with Ernest Fletcher Davis in his car. Sam Hill drove out in front of us and we followed him and when we reached a point about one-half mile or so east of the town of Leary some officers stopped the car driven by Sam Hill and caused him to pull over to the right side of Sam Hill's car. We then drove up with Fletcher Davis and parked about fifteen or twenty yards in front of the officer's car. Fletcher Davis stopped his car on the request of Andrew Hill who asked him to stop so he could see about his brother Sam Hill and when we stopped Andrew Hill got out of the car and went back to where his brother was parked, the rest of us remained in the car until the two officers came to question *Fletcher Davis* about his driver's license and *I heard the officers tell him that they were going to take him in because he didn't have a driver's license.* By this time we were all out of the car and standing around it. One of the officers then asked which one of us had a driver's license and I told him that I had an Army Driving license and they then asked me how long I had been out of the Army and when I told them they told me that my license was no longer any good and that I could not drive the car in and then one of the officers said he would drive the car in for us. Fletcher Davis told him that the car would not start without being pushed and the other officer said he would push him with his car. This officer got in Fletcher Davis's car with Fletcher Davis and Joe N. Lott. By this time I had walked around behind the officer's car and saw that *he had Oklahoma License Tags on it and I remarked to the other boys that the officers were not officers because they had Oklahoma license on their car.* The second officer came back to his car and got in it in order to push Fletcher Davis's car off and when *this officer got in his car, Andrew Hill got in beside him and I got in beside Andrew Hill. We shut the car door and the officer started the motor and had his hands on the steering wheel ready to push the other officer off. I then saw his bone handled, nickel plated revolver laying in his lap with the butt toward me and I reached over in front of Andrew Hill and grabbed the butt of this revolver, and as I did this Andrew Hill grabbed the officer with his left arm which he had laying up over the back of the seat and grabbed the pistol barrel with his right hand. The officer also grabbed for the pistol and the pistol went off. Before this scuffle began this officer had pushed the Davis car in which the other officer was riding off and just as this other car started is when I*

*made a grab for the pistol. When the pistol went off the officer remarked that he was shot and started to get out of the car. I jumped out of the car and went around to the officer's side and pushed him back in the car and closed the door and then ran over to the railroad. Several of us ran for some distance and in a few minutes Andrew Hill called to us and told us to come back to the car.* Sam Hill had never left his car but Joe Johnson, Charlie Lee, Herman Gooden and myself had run down the railroad and came back to Sam Hill's car when Andrew Hill called us. When we came back we all got in Sam Hill's car and drove east toward Texarkana until we came to midway and then we turned south on a gravel road and went over to Highway No. 67. We then turned west on Highway 67 toward Maud and came to Old Boston by the old dirt road and then went through New Boston north and hit a dirt road which turned back east toward home. *During this ride Andrew Hill told us that he had shot the officer again through the head and Sam Hill tried to get him to go back and get the officer's car but Andrew would not do it. Andrew Hill had the officer's pistol with him during this ride. Charlie Lee told us all that at the time the first shot was fired he was in the back seat of the officers' car and that he had grabbed the officer from the back and had held him while we took his pistol away.*

" 'I got out of the car a short distance from my home and walked the rest of the way and I was at home in bed when I was arrested early the next morning, Sunday, November 9, 1947. * * *' "

We have italicized those parts of the confession thought to be especially pertinent.

Talley's pistol was found at the home of Andrew Hill under the pillow on his bed.

The facts further show that Talley was shot in the stomach and also through the head. He died immediately.

According to Hubbard's own confession, the first wound inflicted upon Talley resulted from an effort initiated by Hubbard to disarm the officer, in which Andrew Hill, Hubbard and others acted together. They at the time were not under arrest, but were going voluntarily to aid in paying a fine for their friend Davis, because he had been driving a car without a license.

As the record appears we cannot say the trial court was in error in remanding relator without bond.

The judgment is affirmed.

ON RELATOR'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Relator insists that the "corpus delicti" was not established.

The facts showed that deceased came to his death as a result of a criminal act. Relator's confession showed that he was guilty of that act. Such facts established the "corpus delicti." Branch's P. C., Sec. 1890.

It is also insisted that the facts establish that the killing, in so far as relator is concerned, reasonably raised the defense of accidental killing during a "scuffle" over the pistol.

Whether the facts raise such a defense is not decided. What we hold is that such a defense is not sufficiently raised to take this case out of the rule of "proof evident."

In disposing of this case originally, the facts were stated at some length—in fact, more so than is usually done in bail cases. No useful purpose would be served to further advert thereto.

Relator's motion for rehearing is overruled.

Opinion approved by the Court.